## Warrington Township Supervisors v. Lees

*Bodley & Glascott*, for plaintiffs.
*Hartzel & Bush*, for defendants.

BECKERT, J., December 21, 1965. — On or about March 5, 1963, certain taxpayers of a portion of Warrington Township, a second class township located within this county, did, by petition, request the supervisors of said township to create a water district. The petition was duly presented in accordance with the Act of July 10, 1947, P. L. 1481, 53 PS §66609. The supervisors, after reviewing the aforesaid petition, deemed the same to be in compliance with the aforementioned act and accordingly did constitute, by resolution, ". . . that the Section of Warrington Township comprising all property fronting solely on Upper and Lower Barness Roads is hereby declared to be a Water Dis-

trict and further, that it is the intent of the Board of Supervisors to make the necessary arrangements leading to the furnishing of a Public Water Distribution System in said District in accordance with the Petition received and the laws of the Commonwealth as they apply to Second Class Townships".

On or about August 5, 1963, the supervisors entered into agreements with 25 of the 35 property owners of the water district. The pertinent parts of this agreement are as follows:

"1) The Supervisors do hereby agree to proceed to completion of the project in accordance with plans and specifications . . .

"2) In lieu of a front foot assessment or by an assessment of benefits as established by the Common Pleas Court of Bucks County, the undersigned owners do hereby agree to pay the expense of installation of the Water Distribution System . . .

"3) The property owners who are parties to this Agreement recognize that a Municipal Lien will be filed against their properties within six months after completion of the project . . ."

The remaining 10 property owners within the district refused to enter into the aforementioned agreement. The township supervisors filed 10 separate petitions with this court for the appointment of a board of view. This procedure was purportedly requested in accordance with section (b) of the Act of May 1, 1933, P. L. 103, article XVI, sec. 1610; July 10, 1947, P. L. 1481, sec. 42, subsec. 1610, which provides:

"(b) By an assessment upon the several properties abutting on the mains in proportion to benefits. The amount of the charge on each property shall be ascertained as hereinafter provided".

Section 1611 of the aforesaid act, 53 PS §66611, provides:

"In all cases where the board of supervisors shall

select the method provided in subsection (b) of the foregoing section, they shall petition the court of common pleas for appointment of viewers to assess benefits . . . the court shall thereupon appoint three disinterested persons from the board of county viewers . . . and the viewers so appointed shall proceed as provided in this act for proceedings for the assessment of damages and benefits by viewers . . ."

The board, pursuant to this appointment, viewed the area and took testimony; the same, however, was not stenographically recorded, and in due course they filed their reports.

From the reports, all property owners, with the exception of Lees, filed exceptions to the report of that body.

The main thrust of exceptants' position is that the viewers cannot lawfully assess on a benefit theory, in view of the fact that other properties encompassed in the water district were assessed on another theory. We do not feel that it is necessary at this juncture to decide the legal propriety of the agreements of August 5, 1963, or to decide that the aforesaid agreements would in fact constitute an assessment.

It is evident to us, however, from a reading of the entire record and from the oral arguments of counsel, that the viewers considered the agreements of August 5, 1963, in reaching their ultimate conclusions pertaining to the individual assessments against the 10 non-agreeing property owners. The aforesaid agreement should not have been brought to the viewers' attention, as it obviously was, by virtue of being attached as an exhibit to the petition requesting this court to appoint the viewers. The viewers were to assess in accordance with the benefits accruing to each of the 10 property owners by virtue of having the local improvement installed abutting their respective properties. Therefore, whether other property owners, by virtue of

agreements entered into with the township, may have agreed to pay $10 to $1,000 each would have no relevancy, bearing, or evidentiary value on the sole question before the viewers, namely, the benefits conferred on each of these 10 properties as the result of this local improvement.

It is obvious that the board of view did take the property owners'-supervisors' agreements into consideration, for the total individual assessments of all 10 of the viewers' reports equals the amount remaining unpaid or unpledged.

Knowing that the human mind is unable to permanently erase that which is once imprinted thereon, we feel that the dictates of our conscience, and, we would assume, the conscience of the past board, would require the appointment of a newly constituted board to proceed de novo and assess the benefits conferred in accordance with the applicable act of assembly.

Therefore, met with the present record, we are constrained to refer the matter to a newly constituted board of view, whose duty it shall be to conduct a view, to take testimony and report to the court an assessment of each of the remaining nine properties abutting on the water mains in proportion to the benefits conferred on each property, without regard or knowledge as to any amounts paid, or agreed to be paid by any other property owner within the water district.

We, therefore, enter the following order:

And now, to wit, December 21, 1965, petitioners Gustav F. Petry, Warren C. Roth and Walter S. Hayes, comprising the Board of Supervisors of Warrington Township, Bucks County, Pa., are ordered and directed to file within 30 days hereof petitions and orders for the appointment of three disinterested persons from the board of county viewers to assess benefits against the above-captioned defendants, in accordance with the applicable acts of assembly. It is further

ordered and directed that said petitions and orders shall not incorporate therein by averment, or otherwise, the terms and conditions of the agreements of August 5, 1963. It is further ordered that the prothonotary shall impound the present record of each of the above captioned matters until further order of this court.

Failure to file the aforesaid petitions and orders within the time allocated by this order shall, without further order of this court, abrogate the awards of the viewers heretofore filed.